# IN THE COURT OF APPEALS OF TENNESSEE
## AT JACKSON
### October 21, 2014 Session

## MICHAEL LEE HORTON v. BRENDA KAY HORTON

**Appeal from the General Sessions Court for Hardin County**
**No. 7937    Daniel L. Smith, Judge**

---

**No. W2014-00880-COA-R3-CV - Filed November 21, 2014**

---

This divorce action follows a thirty-three year marriage. Plaintiff Husband appeals the trial court's property division, award of alimony in futuro to Wife, and award of attorney's fees to Wife. We affirm.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the General Sessions Court Affirmed**

ARNOLD B. GOLDIN, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J.,W.S. and RICHARD H. DINKINS, J. joined.

Joe L. Brown, Savannah, Tennessee, for the appellant, Michael Lee Horton.

T. L. Wood, Adamsville, Tennessee, for the appellee, Brenda Kay Horton.

## MEMORANDUM OPINION[1]

Plaintiff/Appellant Michael Lee Horton ("Mr. Horton") and Defendant/Appellee Brenda Kay Savell Horton ("Ms. Horton") were married in 1980 and have two adult children. Mr. Horton has worked for Kimberly Clark Corporation ("Kimberly Clark") since 1982 and

---

[1]Rule 10 of the Rules of the Court of Appeals of Tennessee provides:

This Court, with the concurrence of all judges participating in the case, may affirm, reverse or modify the actions of the trial court by memorandum opinion when a formal opinion would have no precedential value. When a case is decided by memorandum opinion it shall be designated "MEMORANDUM OPINION", shall not be published, and shall not be cited or relied on for any reason in any unrelated case.

earns approximately $25 per hour. Ms. Horton worked sporadically at various jobs throughout the marriage, but Mr. Horton was the family's primary financial supporter. For most of the marriage, the parties lived in a home jointly owned by Ms. Horton and her parents. Following the death of Ms. Horton's father, Ms. Horton has owned the property jointly with her mother, with rights of survivorship. Ms. Horton is 57 years of age; Mr. Horton is 61 years of age.

In August 2010, Ms. Horton left the parties' residence after Mr. Horton asked her to sign a consent form to remove her as beneficiary of his 401-K. Ms. Horton lived with her sister in Mississippi for approximately two years. She returned to Hardin County in August 2012 and found another woman's personal belongings in the home. The parties dispute the nature of Mr. Horton's relationship with this woman.

In September 2012, Mr. Horton filed a complaint for divorce in the Hardin County General Sessions Court. He alleged irreconcilable differences, abandonment, and inappropriate marital conduct as grounds for divorce. Mr. Horton alleged that the parties had divided their personal property, but sought an equitable division of real property located at Robinson Road in Counce ("the Robinson Road property"), and associated debt.

Ms. Horton answered in October 2012, admitting that the parties had irreconcilable differences but denying Mr. Horton's allegations of abandonment and inappropriate marital conduct. She asserted that the Robinson Road property was her separate property. Ms. Horton counterclaimed for a divorce on the grounds of inappropriate marital conduct and adultery. She also prayed for an equitable division of marital property and temporary and permanent support. Mr. Horton answered, denying allegations of grounds other than irreconcilable differences and generally denying "all other allegations not herinbefore(sic) either admitted or denied[.]"

Following unsuccessful mediation in July 2013, the matter was heard by the trial court in October 2013. The trial court made findings of fact and conclusion of law on December 10, 2013. The trial court found that both parties had contributed to the demise of the marriage; that the Robinson Road property was purchased in 1993 by Ms. Horton and her parents as joint tenants with the right of survivorship; that the purchase price of the Robinson Road property was $54,981.60; and that Ms. Horton's interest in the Robinson Road property was her separate property. The trial court found that Ms. Horton's father, V. W. Savell ("Mr. Savell"), paid for the Robinson Road property; that Mr. Savell was deceased; and that Ms. Horton owned one-half of the property, less any appreciation, as her separate property. It held that any appreciation in Ms. Horton's one-half interest was a marital asset, and that the property was valued at $80,000. It found that Ms. Horton had an interest in the amount of $27,490,80 in the Robinson Road property as her separate property.

The trial court also found that, prior to their separation, both parties contributed to the acquisition, preservation, appreciation and dissipation of marital and separate property, and that Mr. Horton made significant contributions to the appreciation of the Robinson Road property. The trial court noted that Mr. Horton testified that the value of the Robinson Road

property was $150,000 and that Mr. Horton sought $40,000 for a one-half interest in the property. It also noted that Ms. Horton testified that the property was valued at $60,000. The trial court found the value of the property to be $80,000; that Ms. Horton's mother had a one-half interest in the property; that Ms. Horton's separate interest was valued at $27,509.20; and that the appreciation in value in the amount of $12,509.20 was a marital asset. It awarded that asset to Ms. Horton, and additionally awarded her an adjoining four-acre tract valued at $4,000. The trial court awarded Mr. Horton a seven-acre tract located in the Olivehill Community valued at $12,800.00. The trial court found that various personal property, including tractor implements, tools, guns and a safe, had been stolen and could not be divided. It found that any property recovered should be divided equally. The trial court also found that Mr. Horton's pension from Kimberly Clark also should be divided equally; that Ms. Horton was an economically disadvantaged spouse; and that, in consideration of the factors set-forth in Tennessee Code Annotated § 36-5-1-101, Ms. Horton was entitled to alimony *in futuro*.

The trial court additionally found that the parties' owned marital property valued at $136,996.02 and had marital debt totaling $25,094.00. It found that Mr. Horton had been employed at Kimberly Clark for 31 years; that his gross income in 2011 was $68,477.00; that Mr. Horton testified that his gross income in 2012 was approximately $72,000.00; and that Mr. Horton testified that his monthly expenses totaled $3,334.80. It found that Ms. Horton's gross income in 2011 was $14,569.00; that her gross income in 2012 was $9,722.00; and that Ms. Horton's "work history consist[ed] of mostly manual labor at or around minimum wage." The trial court noted that Ms. Horton testified that she was doing "odd jobs" and had not worked full-time since July 2012, and that her monthly expenses totaled $2,382.00. The trial court found that Mr. Horton had the ability to acquire capital assets and income as a result of his earning capacity, and that Ms. Horton did not have the ability to acquire capital assets and income relative to Mr. Horton. It found that Mr. Horton would be gainfully employed after the divorce, and that he would draw approximately $2,301.00 per month in social security benefits upon reaching 66 years of age. The trial court found that there had been no testimony regarding whether Ms. Horton would be entitled to social security benefits.

The trial court determined that both parties were entitled to a divorce on the ground of inappropriate marital conduct, and awarded each a divorce from the other.[2] In addition to awarding Ms. Horton her interest in the Robinson Road property as her separate property, the trial court awarded Ms. Horton marital property valued in the amount of $62,754.61. The trial court found that Mr. Horton had not identified any separate property, and awarded Mr. Horton marital property valued in the amount of $74,241.41. The trial court assigned debt in the amount of $4,832.00 to Ms. Horton and debt in the amount of $35,117.60 to Mr.

---

[2]Tennessee Code Annotated § 36–4–129 permits the trial court to declare the parties divorced rather than awarding a divorce to either party.

Horton. It determined that Ms. Horton was entitled to alimony *in futuro* in the amount of $850.00 per month until Mr. Horton retires, and $700.00 per month thereafter. It also determined that Ms. Horton was entitled to her attorney's fees in the amount of $1,800.00. The trial court entered final judgment in the matter on February 6, 2014, and incorporated its December 2013 findings of fact and conclusions of law into the final judgment. Mr. Horton filed a timely notice of appeal to this Court.

## Issues Presented

Mr. Horton presents the following issues for our review, as stated by him:
1) Whether the trial court erred in its division of marital property and marital debt.
2) Whether the trial court erred when it awarded the Wife monthly alimony *in futuro*.
3) Whether the trial court erred when it awarded Wife her attorney fees.

## Division of Property

We turn first to Mr. Horton's assertion that the trial court failed to divide the parties' property and debt equitably. Rule 7 of the Court of Appeals provides:

(a) In any domestic relations appeal in which either party takes issue with the classification of property or debt or with the manner in which the trial court divided or allocated the marital property or debt, the brief of the party raising the issue shall contain, in the statement of facts or in an appendix, a table in a form substantially similar to the form attached hereto. This table shall list all property and debts considered by the trial court, including: (1) all separate property, (2) all marital property, and (3) all separate and marital debts.

(b) Each entry in the table must include a citation to the record where each party's evidence regarding the classification or valuation of the property or debt can be found and a citation to the record where the trial court's decision regarding the classification, valuation, division, or allocation of the property debt can be found.

© If counsel disagrees with any entry in the opposing counsel's table, counsel must include in his or her brief, or in a reply brief if the issue was raised by opposing counsel after counsel filed his or her initial brief, a similar table containing counsel's version of the facts.

This Court repeatedly has held that the failure to comply with the requirements of Rule 7 waives issues relating to the division of property in a divorce case. *E.g., Welch v. Welch*, No. M2013–01025–COA–R3–CV, 2014 WL 107982, at *3-4 (Tenn. Ct. App. Jan. 10, 2014); *Chambers v. Chambers*, No. W2012–00068–COA–R3–CV, 2013 WL 375403, at *2 (Tenn. Ct. App. Jan. 31, 2013); *Forbess v. Forbess*, No. W2011–01105–COA–R3–CV, 2011 WL 6153607, at *6 (Tenn. Ct. App. Dec. 9, 2011), perm. app. denied (Tenn. Apr. 12, 2012). We do not have a duty to search the trial court record to discern the valuation of the parties' property. As we previously have stated, a table in compliance with Rule 7 is necessary to our consideration of property division issues in a divorce case, and that the issue will be waived for failure to comply with the rule. *Id.* (citation omitted). As counsel conceded at oral argument of this matter, Mr. Horton's brief does not contain a table complying with the requirements of Rule 7. We accordingly find the issue of division of property waived in this case.

## Alimony

It is well-settled that an award of alimony depends on the totality of the circumstances of each case, with the financial need of the recipient spouse and the obligor spouse's ability to pay being the primary considerations. *Mayfield v. Mayfield*, 395 S.W.3d 108, 115-16 (Tenn. 2012); *Burlew v. Burlew*, 40 S.W.3d 465, 472 (Tenn. 2001). When determining the type and amount of alimony to be awarded, the trial court must balance several statutory factors, including those set-forth in Tennessee Code Annotated § 36–5–121(I).[3] Although

[3]Section 36–5–121(I) provides:
In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(1) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;
(2) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earnings capacity to a reasonable level;
(3) The duration of the marriage;
(4) The age and mental condition of each party;
(5) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;
(6) The extent to which it would be undesirable for a party to seek employment outside the home, because such party will be custodian of a minor child of the marriage;
(7) The separate assets of each party, both real and personal, tangible and intangible;
(8) The provisions made with regard to the marital property, as defined in § 36–4–121;
(9) The standard of living of the parties established during the marriage;
(10) The extent to which each party has made such tangible and intangible contributions to

there is a preference for rehabilitative alimony, the type and amount of an alimony award remain largely within the discretion of the trial court. *Mayfield*, 395 S.W.3d at 114. We review a trial court's decision regarding an award of alimony under an abuse of discretion standard, and will not alter the award absent an abuse of discretion. *Id.* at 114-15. "Abuse of discretion is found 'only when the trial court applied incorrect legal standards, reached an illogical conclusion, based its decision on a clearly erroneous assessment of the evidence, or employed reasoning that causes an injustice to the complaining party.'" *Discover Bank v. Morgan*, 363 S.W.3d 479, 487 (Tenn. 2012) (citing *State v. Jordan*, 325 S.W.3d 1, 39 (Tenn. 2010) (quoting *State v. Banks*, 271 S.W.3d 90, 116 (Tenn. 2008))). Under this standard, "a trial court's ruling 'will be upheld so long as reasonable minds can disagree as to [the] propriety of the decision made.'" *Id.* (quoting *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001)). "The abuse of discretion standard does not permit an appellate court to merely substitute its judgment for that of the trial court." *Id.*

In this case, Mr. Horton does not contend that the trial court erred in its factual findings with respect to the parties' income or relative earning capacity. As we understand the argument presented in his brief, Mr. Horton also does not argue that the trial court erred by granting Ms. Horton alimony *in futuro*, or that it erred in awarding her alimony in the amount of $850 per month until Mr. Horton retires. Mr. Horton's argument, as we understand it, is that the award of $700 per month after he retires is excessive. Mr. Horton asserts that, if he retires at age 62, is income would be $1,381.00 per month after paying Ms. Horton alimony in the amount of $700 per month. He submits that "[i]f [Ms.] Horton gets ½ of Mr. Horton[']s pension which equals $350 + $700 in alimony + her earning or disability, her monthly income will greatly exceed Mr. Horton's."

As noted above, the trial court found that Ms. Horton worked only sporadically during the course of the parties' marriage, and that she generally earned only minimum wage. Additionally, Ms. Horton testified that she had not worked full-time since July 2012, and the record contains no evidence to dispute her testimony. As the trial court noted, there is no evidence that Ms. Horton will be entitled other benefits upon retirement, or that such benefits were foreseeable when the trial court entered final judgment in this matter.

We observe, moreover, that an award of alimony *in futuro* may be modified upon a showing of a substantial and material change in circumstances. Tennessee Code Annotated § 36-5-121(f)(2)(A). Thus, if Ms. Horton should, in fact, qualify for social security or

---

the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;
(11) The relative fault of the parties, in cases where the court, in its discretion, deems it appropriate to do so; and
(12) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

disability payments, Mr. Horton would not be precluded from petitioning for modification of the alimony award. *See Parish v. Parish*, No. W2013–00316–COA–R3–CV, 2013 WL 3203352, at *14 n.3 (Tenn. Ct. App. June 21, 2013). We affirm the award of alimony in this case.

## Award of Attorney's Fees

We next turn to whether the trial court erred by awarding Ms. Horton attorney's fees in the amount of $1,800.00. The decision to award attorney's fees as an award of alimony *in solido* in a divorce action lies within the discretion of the trial court, and we will not reverse the award absent an abuse of discretion. *E.g., Fickle v. Fickle*, 287 S.W.3d 723, 737 (Tenn. Ct. App. 2008). Upon review of the record in this case, we discern no abuse of discretion by the trial court.

## Holding

In light of the foregoing, we affirm the judgment of the trial court. Ms. Horton's request for attorney's fees on appeal are denied. Costs on appeal are taxed to the Appellant, Michael Lee Horton, and his surety, for which execution may issue if necessary. This matter is remanded to the trial court for enforcement of the judgment and the collection of costs.

_____
ARNOLD B. GOLDIN, JUDGE